# INVOICE

| **FROM** | **FILE NUMBER** |
|---|---|
| ACM Consultants, Inc.<br>Len Inokuma, CRA<br>2073 Wells Street Suite 100<br>Wailuku, HI 96793 | 6-1713 |

**TO**

Freedom Equity Group Financial Services
Shanell Higa
270 Hookahi Street Suite #306
Wailuku, HI 96793

| Invoice Date | Appraisal Date | Client Case Number | Appraisal Office Tax ID Number | Appraisal Office Phone Number |
|---|---|---|---|---|
| 6/12/2006 | 5/22/2006 | | 94-3268494 | (808) 242-6481 |

**PROPERTY INFORMATION**

Purchaser/Borrower  Antonio Panlasigui

Property Address  57 Piina Place　　　　　　　　　　　　　　　　Unit No. N/A

City  Lahaina　　　　　　　　Subdivision  Kapua Village Subdivision

County  Maui　　　　　　　State  HI　　　　Zip Code  96761

Legal Description  Lot 18, Kapua Village Subdivision

**INVOICE INFORMATION**

| | | |
|---|---|---|
| Appraisal Fee Amount | $ | 600.00 |
| Mail or Handling Fee | $ | |
| Additional Charge No. 1 ....... pd cc MC - Lee-Ann Panlasigui | $ | -625.00 |
| Additional Charge No. 2 ......... | $ | |
| Additional Charge No. 3 ......... | $ | |
| Sales Tax ( 4.166 %) | $ | 25.00 |
| Total Amount of Invoice | $ | 0.00 |

Comments:

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| Invoice Date | Appraisal Date | Client Case Number | Appraiser's File Number | Client's Phone Number |
|---|---|---|---|---|
| 6/12/2006 | 5/22/2006 | | 6-1713 | |

| **FROM** | **AMOUNT DUE** |
|---|---|
| Freedom Equity Group Financial Services<br>Shanell Higa<br>270 Hookahi Street Suite #306<br>Wailuku, HI 96793 | $ 0.00 |

| **TO** | **AMOUNT ENCLOSED** |
|---|---|
| ACM Consultants, Inc.<br>Len Inokuma, CRA<br>2073 Wells Street Suite 100<br>Wailuku, HI 96793 | $ |

**TERMS - Balance due upon receipt of invoice. Please return this portion with your payment. Thank you!**



## Property Address:

57 Piina Place
Lahaina, HI 96761

## Prepared For:

Freedom Equity Group Financial Services
270 Hookahi Street Suite #306
Wailuku, HI 96793

## Prepared As Of:

5/22/2006

## Prepared By:

Len Inokuma, CRA
ACM Consultants, Inc.
2073 Wells Street Suite 100
Wailuku, HI 96793
(808) 242-6481

## Uniform Residential Appraisal Report

File #   6-1713

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

**SUBJECT**

| | | |
|---|---|---|
| Property Address 57 Piina Place | City Lahaina | State HI   Zip Code 96761 |
| Borrower Antonio Panlasigui | Owner of Public Record Antonio Panlasigui | County Maui |

Legal Description Lot 18, Kapua Village Subdivision

| | | |
|---|---|---|
| Assessors Parcel #   (2) 4-3-9-70 | Tax Year 2006 | R.E. Taxes $ 1,448.60 |
| Neighborhood Name Kapua Village Subdivision | Map Reference (2) 4-3-9-70 | Census Tract 0315.00 |

Occupant ☒ Owner ☐ Tenant ☐ Vacant    Special Assessments $ N/App    ☒ PUD   HOA $ 35.00 ☐ per year ☒ per month

Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)

Assignment Type ☐ Purchase Transaction ☒ Refinance Transaction ☐ Other (describe)

Lender/Client Freedom Equity Group Financial Services    Address   270 Hookahi Street Suite #306, Wailuku, HI 96793

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☐ Yes ☒ No

Report data source(s) used, offering price(s), and date(s). Multiple Listing Service

**CONTRACT**

I ☐ did ☒ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed. Not applicable - Not a sale.

Contract Price $ N/App    Date of Contract N/App    Is the property seller the owner of public record? ☐ Yes ☐ No   Data Source(s) N/App

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☐ No

If Yes, report the total dollar amount and describe the items to be paid. Not applicable - Not a sale

**NEIGHBORHOOD**

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | One-Unit Housing Trends | One-Unit Housing | Present Land Use % |
|---|---|---|---|
| Location ☒ Urban ☐ Suburban ☐ Rural | Property Values ☒ Increasing ☐ Stable ☐ Declining | PRICE    AGE | One-Unit   30 % |
| Built-up ☐ Over 75% ☒ 25-75% ☐ Under 25% | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | $ (000)    (yrs) | 2-4 Unit   20 % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | Marketing Time ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | 400   Low   New | Multi-Family   5 % |
| Neighborhood Boundaries   Kahana is bounded by the Napili to the north, west Maui Maui mountains to | | 3,500   High   50+ | Commercial   25 % |
| the east, Kaanapali to the south, and Pacific Ocean to the west. | | 500-2500 Pred. 15-25 | Other Vacant   20 % |

Neighborhood Description   The subject's Kahana/Napili neighborhood is located between the Kaanapali and Kapalua resorts. The area consists of a mix of single family residential subdivisions, condominium projects and hotels. The neighborhood is convenient to employment, shopping, schools, places of worship and recreational facilities.

Market Conditions (including support for the above conclusions)   There were no readily apparent adverse factors affecting marketability. Real estate and construction market are fairly active and economic growth has been steady. Employment is in agriculture, government, tourism, and service industries.

**SITE**

Dimensions Metes and bounds as generally found in a title report    Area 6,084 SF    Shape Mostly Rectangular    View Partial Ocean/Mountain

Specific Zoning Classification R-1 Residential (6,000 SF minimum)    Zoning Description Single family residential use

Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)

Is the highest and best use of the subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No   If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements — Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street Paved asphalt | ☒ | |
| Gas | | None | Sanitary Sewer | ☒ | | Alley None | | |

FEMA Special Flood Hazard Area? ☐ Yes ☒ No   FEMA Flood Zone C    FEMA Map # 1500030151C    FEMA Map Date 1997-09-17

Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No   If Yes, describe There were no adverse site conditions or external factors readily observable or made known to the appraiser. Utilities, access, zoning and land use are consistent and typical of the neighborhood.

**IMPROVEMENTS**

| General Description | Foundation | Exterior Description   materials/condition | Interior    materials/condition |
|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | ☒ Concrete Slab ☐ Crawl Space | Foundation Walls Concrete Slab/Avg | Floors Ceramic/Pergo/Avg |
| # of Stories 1.5 | ☐ Full Basement ☐ Partial Basement | Exterior Walls Stucco/Avg | Walls Drywall/Avg |
| Type ☐ Det. ☐ Att. ☐ S-Det./End Unit | Basement Area N/App sq. ft. | Roof Surface Comp. Shingle/Avg | Trim/Finish Average |
| ☒ Existing ☐ Proposed ☐ Under Const. | Basement Finished N/App % | Gutters & Downspouts None | Bath Floor Ceramic/Avg |
| Design (Style) 1.5 Story | ☐ Outside Entry/Exit ☐ Sump Pump | Window Type Fixed/Sliding Case/Avg | Bath Wainscot Ceramic/Avg |
| Year Built 2004 | Evidence of ☐ Infestation | Storm Sash/Insulated N/App | Car Storage ☐ None |
| Effective Age (Yrs) 2 years | ☐ Dampness ☐ Settlement | Screens Yes/Avg | ☐ Driveway # of Cars |
| Attic ☒ None | Heating ☐ FWA ☐ HWBB ☐ Radiant | Amenities ☐ WoodStove(s) # | Driveway Surface Concrete |
| ☐ Drop Stair ☐ Stairs | ☐ Other None   Fuel N/App | ☐ Fireplace(s) # ☐ Fence | ☒ Garage # of Cars 2 |
| ☐ Floor ☐ Scuttle | Cooling ☐ Central Air Conditioning | ☐ Patio/Deck ☐ Porch | ☐ Carport # of Cars |
| ☐ Finished ☐ Heated | ☐ Individual ☒ Other Split System | ☐ Pool ☐ Other (describe) | ☐ Att. ☐ Det. ☒ Built-in |

Appliances ☒ Refrigerator ☒ Range/Oven ☐ Dishwasher ☐ Disposal ☐ Microwave ☒ Washer/Dryer ☐ Other (describe)

Finished area **above** grade contains:    5 Rooms    3 Bedrooms    2.00 Bath(s)    1,955 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.)   The special features of this property and improvements are contained in the Addenda to this report.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.) No functional or external inadequacies observed. Construction quality, design, materials and workmanship are considered typical of the subject's neighborhood, and physical depreciation is consistent with the subject's age and area. The overall condition of the improvements is rated average or typical of the neighborhood.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness or structural integrity of the property? ☐ Yes ☒ No   If Yes, describe There were no readily observable physical deficiencies or other adverse conditions noted.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No   If No, describe The property is typical and consistent with properties in the neighborhood.

## Uniform Residential Appraisal Report

**File #**    6-1713

There are  **2**  comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 819,500   to $ 899,000   .

There are  **8**  comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 625,000   to $ 975,000   .

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | +(-) $ Adjustment | COMPARABLE SALE # 2 | +(-) $ Adjustment | COMPARABLE SALE # 3 | +(-) $ Adjustment |
|---|---|---|---|---|---|---|---|
| Address | 57 Piina Place | 47 Ponciana Road | | 11 Poinciana Road | | 29 Poinciana Road | |
| | Lahaina, HI 96761 | 4-3-21-99 | | 4-3-21-105 | | 4-3-21-102 | |
| Proximity to Subject | | 0.70 MI SE | | 0.73 MI SE | | 0.72 MI SE | |
| Sale Price | $ N/App | | $ 1,065,000 | | $ 1,049,000 | | $ 1,100,000 |
| Sale Price/Gross Liv. Area | $   sq. ft. | $ 547.00   sq. ft. | | $ 562.17   sq. ft. | | $ 486.30   sq. ft. | |
| Data Source(s) | | MLS 313934 & Tax Office | | MLS 313193 & Tax Office | | MLS 313953 & Tax Office | |
| Verification Source(s) | | Doc 06-049116 | | Doc 05-257188 | | Doc 05-243416 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | | Conventional | 0 | Conventional | 0 | Conventional | 0 |
| Concessions | | DOM 174 days | | DOM 119 days | | DOM 65 days | |
| Date of Sale/Time | | 3/22/2006 COE | 0 | 12/16/2005 COE | 0 | 11/30/2005 COE | 0 |
| Location | Kahana | Kahana | | Kahana | | Kahana | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 6,084 SF | 6,000 SF | 0 | 7,308 SF | -2,000 | 6,000 SF | 0 |
| View | Ptl Ocn/Mountain | Ptl Ocn/Mountain | 0 | Ptl Ocn/Mountain | 0 | Ptl Ocn/Mountain | 0 |
| Design (Style) | 1.5 Story | 1.5 Story | | 1.5 Story | | 1.5 Story | |
| Quality of Construction | Average | Avg/Similar | 0 | Avg/Similar | 0 | Avg/Similar | 0 |
| Actual Age | 2 years | 6 years | +1,000 | 7 years | +1,250 | 5 years | +750 |
| Condition | Average | Avg/Similar | 0 | Avg/Similar | 0 | Avg/Similar | 0 |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 5   3   2.0 | 6   3   2.5 | -500 | 6   4   3.0 | -2,000 | 6   3   2.0 | 0 |
| Gross Living Area | 1,955 sq. ft. | 1,947 sq. ft. | 0 | 1,866 sq. ft. | +4,005 | 2,262 sq. ft. | -13,815 |
| Basement & Finished | None | None | | None | | None | |
| Rooms Below Grade | None | None | | None | | None | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | Split Sys A/C | Central A/C | -5,000 | Split A/C | 0 | Central A/C | -5,000 |
| Energy Efficient Items | None | None | | None | | None | |
| Garage/Carport | 2 garage | 2 garage | | 2 garage | | 3 garage | -2,500 |
| Porch/Patio/Deck | Porch, Lanai, | 180 SF Deck | | 66 SF Porch | | Deck, Patio, | |
| | Deck | 146 SF Patio | +1,000 | 96 SF Deck | +3,000 | Porch | 0 |
| | Cost to Cure | None | -17,000 | None | -17,000 | None | -17,000 |
| Net Adjustment (Total) | | ☐ + ☒ − $ | -20,500 | ☐ + ☒ − $ | -12,745 | ☐ + ☒ − $ | -37,565 |
| Adjusted Sale Price | | Net Adj.   1.92% | | Net Adj.   1.21% | | Net Adj.   3.42% | |
| of Comparables | | Gross Adj. 2.30% $ | 1,044,500 | Gross Adj. 2.79% $ | 1,036,255 | Gross Adj. 3.55% $ | 1,062,435 |

I ☒ did   ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☒ did   ☐ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.

Data Source(s) Multiple Listing Service, Tax Office, WebResearch, RealQuest

My research ☐ did ☒ did not reveal any prior sales or transfers of the comparables sales for the year prior to the date of sale of the comparable sale.

Data Source(s) Multiple Listing Service, Tax Office, WebResearch, RealQuest

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE # 2 | COMPARABLE SALE # 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 9/15/2005, 8/31/2005, 6/13/2005 | No prior sale within 1 year | No prior sale within 1 year | No prior sale within 1 year |
| Price of Prior Sale/Transfer | $0.00, $0.00, $0.00 (Internal Transfer) | | | |
| Data Source(s) | MLS, WebResearch, RealQuest | MLS & WebResearch/RealQuest | MLS & WebResearch/RealQuest | MLS & WebResearch/RealQuest |
| Effective Date of Data Source(s) | 6/9/2006 | 6/9/2006 | 6/9/2006 | 6/9/2006 |

Analysis of prior sale or transfer history of the subject property and comparable sales Based upon our analysis of transactions during the periods of the prior transactions of the subject and/or the comparables, it appears that the prior sale prices were reflective of the current market at that time.

The prior sales appear to indicate a rising real estate market.

Summary of Sales Comparison Approach REFER TO ADDENDA

ASSESSED VALUES:     Land - $88,000    Impr - $159,200

Indicated Value by Sales Comparison Approach $ 1,050,000

Indicated Value by:   Sales Comparison Approach $ 1,050,000     Cost Approach (if developed) $ 983,000     Income Approach (if developed) $ N/App

REFER TO ADDENDA

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ **1,050,000** , as of 5/22/2006 , which is the date of inspection and the effective date of this appraisal.

*(sidebar left: SALES COMPARISON APPROACH)*

*(sidebar left: RECONCILIATION)*

# Uniform Residential Appraisal Report
File # 6-1713

## SCOPE OF WORK

According to the County of Maui Tax Office, the owner of record as of June 9, 2006, was Antonio Panlasigui.

Definitions implicit in the Scope of Work are as follows:

(1) Complete Visual Inspection: The complete visual inspection is not intended to be equivalent to a professional building inspector. Additionally, the inspection was of observable areas only and not of areas not readily observable. Visual observation was conducted solely for the purpose of understanding the physical characteristics of the property as a typical buyer and seller would in the process of determining market value.

(2) Intended User: The Intended User of this appraisal report is the Lender/Client. The Intended Use is to evaluate the property that is the subject of this appraisal for a mortgage finance transaction, subject to the stated Scope of Work, purpose of the appraisal, reporting requirements of this appraisal report form, and Definition of Market Value. No additional Intended Users are identified by the appraiser.

(3) Extent of Data Research: For the purposes of this appraisal assignment, data research of the subject and comparable properties included the following sources of information as available: Multiple Listing Service, County of Maui Tax Office, State of Hawaii Tax Map, WebResearch, and RealQuest. EXTRAORDINARY ASSUMPTIONS and HYPOTHETICAL CONDITIONS

A portion of the rear retaining wall was damaged and in need of repairs. A $15,000 estimate to repair the damage to the wall was provided to the appraiser. A cost to cure and an amount for risk have been applied in both the Cost and Sales Comparison Approaches to reflect the repair to the retaining wall. Therefore the final value estimate is based upon the extraordinary assumption that the wall has been repaired.

## COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)  Comparable Land Transactions

TMK 4-3-20-60, Rec 5/2006, $537,000, Area 6,880 SF
TMK 4-3-19-39, Rec 4/2006, $610,000, Area 7,798 SF
TMK 4-3-20-53, Rec 12/2005, $532,500, Area 7,798 SF

ESTIMATED ☐ REPRODUCTION OR ☐ REPLACEMENT COST NEW

Source of cost data Marshall & Swift/Local construction cost trends
Quality rating from cost service Avg  Effective date of cost data 3/2006
Comments on Cost Approach (gross living area calculations, depreciation, etc.)
Marshall & Swift Residential Cost Handbook was utilized as a preliminary guide to cost estimates. It is not considered reliable in this market area without considering local construction cost trends from contractors. The combination of both Marshall & Swift and local construction costs were utilized in estimating the subject's replacement costs.

| OPINION OF SITE VALUE | = $ | 600,000 |
|---|---|---|
| Dwelling 1,955 Sq. Ft. @ $ 185.00 | = $ | 361,675 |
| Sq. Ft. @ $ | = $ | |
| Porch, Lanai, Deck, Solar htr, Cost to Cure | = $ | -11,783 |
| Garage/Carport 480 Sq. Ft. @ $ 50.00 | = $ | 24,000 |
| Total Estimate of Cost-New | = $ | 373,892 |
| Less Physical 3% Functional External Depreciation 11,217 | = $ ( | 11,217 ) |
| Depreciated Cost of Improvements | = $ | 362,675 |
| "As-is" Value of Site Improvements | = $ | 20,000 |
| | = $ | |
| Indicated Value by Cost Approach | = $ | 983,000 |

Estimating Remaining Economic Life (HUD and VA only)　58 Years

## INCOME APPROACH TO VALUE (not required by Fannie Mae)

Estimated Monthly Market Rent $ Not applicable　X Gross Rent Multiplier　Not applicable　= $ Not applicable　Indicated Value by Income Approach
Summary of Income Approach (including support for market rent and GRM)

## PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)? ☐ Yes ☒ No　Unit type(s) ☒ Detached ☐ Attached
Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.
Legal name of project
Total number of phases　Total number of units　Total number of units sold
Total number of units rented　Total number of units for sale　Data source(s)
Was the project created by the conversion of existing building(s) into a PUD? ☐ Yes ☐ No　If Yes, date of conversion.
Does the project contain any multi-dwelling units? ☐ Yes ☐ No　Data source(s)
Are the units, common elements, and recreational facilities complete? ☐ Yes ☐ No　If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association? ☐ Yes ☐ No　If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

## Uniform Residential Appraisal Report

File #     6-1713

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

SCOPE OF WORK: The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

INTENDED USE: The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

INTENDED USER: The intended user of this appraisal report is the lender/client.

DEFINITION OF MARKET VALUE: The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS: The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

## Uniform Residential Appraisal Report

File #    6-1713

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change is made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

## Uniform Residential Appraisal Report

File #  6-1713

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of the Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

Shane Fukuda provided significant professional assistance to the person(s) signing this report.

---

**APPRAISER**

Signature

Name   Len Inokuma, CRA

Company Name   ACM Consultants, Inc.

Company Address   2073 Wells Street Suite 100

   Wailuku, HI 96793

Telephone Number   (808) 242-6481

Email Address   len@acmmaui.com

Date of Signature and Report  6/9/2006

Effective Date of Appraisal   5/22/2006

State Certification #

or State License #   CRA-645

or Other (describe)             State #

State   HI

Expiration Date of Certification or License  12/31/2007

**ADDRESS OF PROPERTY APPRAISED**

57 Piina Place

Lahaina, HI 96761

**APPRAISED VALUE OF SUBJECT PROPERTY $**  1,050,000

**LENDER/CLIENT**

Name  Shanell Higa

Company Name   Freedom Equity Group Financial Services

Company Address   270 Hookahi Street Suite #306

   Wailuku, HI 96793

Email Address

---

**SUPERVISORY APPRAISER (ONLY IF REQUIRED)**

Signature

Name   Ted Yamamura, SRA

Company Name   ACM Consultants, Inc.

Company Address   2073 Wells Street, Suite 100

   Wailuku, HI 96793

Telephone Number   (808) 242-6481

Email Address   ted@acmmaui.com

Date of Signature   6/9/2006

State Certification #

or State License #   CGA-160

State   HI

Expiration Date of Certification or License  12/31/2007

**SUBJECT PROPERTY**

☒ Did not inspect subject property

☐ Did inspect exterior of subject property from street

   Date of Inspection

☐ Did inspect interior and exterior of subject property

   Date of Inspection

**COMPARABLE SALES**

☒ Did not inspect exterior of comparable sales from street

☐ Did inspect exterior of comparable sales from street

---

# Neighborhood Description

## LAHAINA, MAUI, HAWAII

The subject's neighborhood is located in the Lahaina Town area of West Maui. West Maui generally includes the greater Puamana, Lahaina Town, Kaanapali, Honokowai, Mahinahina, Napili, and Kapalua neighborhoods.

Lahaina is part of the West Maui Community Plan of the County of Maui. The West Maui Community Plan covers the entire Lahaina Judicial District located on the western slopes and coastal plain of West Maui. At Lahaina Town, settlement patterns extend mauka at Wahikuli and along Lahainaluna Road. This development pattern is set against a dramatic backdrop of rolling sugar cane and pineapple fields and the West Maui Mountains.



The topography of Lahaina is from sea level to gentle sloping, from the ocean to the base of the West Maui Mountains range. Generally, the climate of Lahaina is dry and arid year-around since the trade winds are shielded by the West Maui Mountains. The natural environment of the Lahaina region characterizes much of what is special about West Maui as a place to live and to visit. The location's region and topography allows for views of the West Maui Mountains range and the neighboring islands of Lanai and Molokai.

Development, for the most part, reflects the region's visitor and agricultural industries. Visitor accommodations are located along the shoreline with necessary support facilities and residential communities. Its tourist attractions, including a replica of a whaling brig that sits in the harbor, help Lahaina to retain the feel of a whaling village. With its historic character and charm, Lahaina town serves as West Maui's visitor service, commercial, and residential center.



Lahaina Town, the regional center of West Maui, contains all the central civic and employment centers, governmental agencies, public facilities, and major businesses of the West Maui region. The Lahaina Town neighborhood is characterized by its warm climate, tourist trade and resort atmosphere, and numerous swimming beaches and beach parks.

Residential neighborhoods directly in Lahaina Town are generally older, and older woodframe dwellings (over 50 years old) are slowly being replaced with new homes. These older properties were subdivided prior to the inception of the Maui County Code; consequently, land sizes of residential properties in Lahaina may vary anywhere from 1,600 to 30,000+ square feet instead of the 6,000 square foot minimum requirement set by the Maui County Code. With the demise of the Pioneer Mill sugar plantation, Lahaina has experienced a steady growth in agricultural lots utilized for rural-residential use.

The entire West Maui district has experienced steady growth and increases in property values over the past decade. Developments such as the Hyatt Regency Kaanapali Hotel, the Maui Marriott Hotel, the Lahaina Cannery Shopping Center, the continued growth and expansion of the Kaanapali and Kapalua Resort areas, and the numerous new businesses geared primarily to the visitor trade have strengthened the employment center of West Maui; consequently, West Maui has been experiencing a shortage of available rental housing and affordable housing throughout the entire West Maui district. Generally, property values within West Maui tend to be higher than properties in other parts of the island.

The real estate activity in the Lahaina area, like the rest of Maui County, has been active in the past 3 years. Oceanfront properties rarely sell due to the limited supply and exclusivity of the properties. Property values range from the moderate to the high end of the total real estate market of Maui.





SOURCE: Realtors Association of Maui





SOURCE: Realtors Association of Maui





## TEXT ADDENDUM

| | | | | |
|---|---|---|---|---|
| Borrower/Client | Antonio Panlasigui | | | |
| Address | 57 Piina Place | | | Unit No. N/A |
| City Lahaina | | County Maui | State HI | Zip Code 96761 |
| Lender/Client | Freedom Equity Group Financial Services | | | |

## ADDENDA

### HIGHEST AND BEST USE

In the highest and best use analysis of the subject property, the Appraiser has considered its possible use or those uses which are physically possible for the site; its permissible (legal) use or those uses which as permitted by zoning and deed restrictions (if any); and its feasible use or those possible uses which will produce the highest net return to the owner of the site under current and projected market conditions.

The subject property is located in a residential neighborhood and the surrounding properties are also similarly zoned and utilized for single family use. There are no anticipated changes in land use, and hence the optimum use of the subject site would be residential use, or its present use.

### COMMENTS ON THE SUBJECT SITE

The subject site contains 6,084 square feet of R-1 Residential zoned land. R-1 Residential zoning requires a minimum of 6,000 square feet per lot and permitted improvements under this zoning include a single family dwelling. The State of Hawaii is an island state with finite amount of land area available for use and private ownership. Due to this natural limited supply of land, it is typical for land (site) values to contribute in excess of 30% of total property value.

The property is a level to gentle slope and has been landscaped with, various shrubs, flowers and trees. There are both ocean and mountain views from the parcel.

### COMMENTS ON THE SUBJECT IMPROVEMENTS

Existing improvements include a 1,955 square foot, 1.5 story woodframe dwelling that is considered typical of the neighborhood. A few of the more notable features include a marble tile entry, recessed lighting, a security system, ceiling fans, wired speaker system, Berber carpet, glass block windows, tinted windows, Corian kitchen counters, a walk in closet, stamped concrete driveway, hollow tile retaining wall, and a irrigation system. There is a built-in 2-car garage, deck, lanai, and porch areas.

The improvements appear to be well maintained and the overall condition of the improvements is rated average.

### THE APPRAISAL PROCESS

The subject was examined and analyzed utilizing the Appraisal Process which involves three generally recognized and accepted methods; namely, the *Sales Comparison Approach, the Income Approach, and the Cost Approach.* Each valuation method is briefly discussed below and finally correlated into a final value estimate.

The *Income Approach* to estimated value for single family residential properties and residential condominium units is the Gross Rent Multiplier (GRM) method (an appraisal technique estimating value on the basis of the income it produces). The GRM is a factor derived from a direct ratio of typical monthly rents and the sales prices of rented single family dwellings or condominiums units; and the validity of the direct ratio is based on the comparability of the properties/units utilized.

The *Cost Approach* to estimate value is based upon the principle that a prudent purchaser would pay no more than the cost of producing a similar property with the same utility. It is a process of estimating the cost to reproduce an identical improvement or improvements on the property, deduct any observed depreciation from the reproduction cost, and arrive at a depreciated cost. This depreciated cost is then added to the land value found by market comparison of competitive vacant land sales to arrive at market value. Building costs are gleaned primarily from local construction cost estimates from architects and contractors, and secondarily from builder's cost handbooks.

The *Sales Comparison Approach* is based upon the principle of substitution whereby a potential purchaser would pay no more than to acquire an existing property with the same utility as the subject. This approach to value is applicable when an active market provides sufficient quantities of reliable data which can be verified from authoritative sources. It is a process of comparing the subject property with recent or recent-past sales of similar type properties in the same or competing neighborhoods. The Appraiser must then adjust the sales price of each comparable property for differences between it and the subject property to arrive at an adjusted sales price. This adjusted sales price is the Appraiser's estimate of what the comparable sales property would have sold for if it had possessed all of the salient characteristics of the subject property at the time of sale.

### INCOME APPROACH

Analysis of the neighborhood indicated a predominance of owner-occupants or insufficient reliable rental/sales data of similar properties to accurately determine a GRM factor; thus, the Income Approach was not a reliable indicator of value in this appraisal assignment.

# TEXT ADDENDUM
## (Continued)

COST APPROACH

Like the sales comparison and income capitalization approaches, the cost approach to value is based on comparison. The Cost Approach to value is based on the premise that a prudent purchaser will not pay more for a property than the cost to create it in its present condition, provided there are no costly delays or economic factors which might influence value.  It is a process of comparing the cost to produce a new subject property or a substitute property with the value of the existing property and adjusted for differences in the age, condition and utility of the subject property.

The Cost Approach to is especially persuasive when the site value is well supported and the improvements are *new* or suffer only minor accrued depreciation.  It is also particularly applicable for special purpose or unique properties such as churches, schools, historic homes, etc., and for properties that do not frequently transact.

The value indicated by the Cost Approach was considered in this appraisal assignment.

SALES COMPARISON ANALYSIS

Proper application of the Sales Comparison Approach requires knowledge of the standards of the local market plus a detailed property inspection and personal observation.  The ability to interpret structural quality and condition are necessary together with knowledge and experience of typical buyer preferences and price reactions in the local market.  Finally, the application of sound judgment is required to produce reasonable results.

The sales comparison analysis is a process in which comparable sales are compared with and to the subject property. The subject property is the standard in terms of which physical and other adjustments are made. The comparisons and adjustments must be made in terms of salient characteristics of both the subject property and the comparable sale properties. Thus, the identification of elements of comparison focuses on the differences between the comparable sale properties and the subject, with respect to the significant or salient property characteristics identified.

Primary criteria utilized in the market research and selection of comparables included consideration of the following factors:

   A)  Relatively recent transaction date, location with the same or
        competing neighborhood, and similar community characteristics
   B)  Similarity in site area and/or zoning and permitted land
        use/density, topographic features and view amenities
   C)  Competitive in improvements including design, quality, age and
        condition, functional utility and overall appearance.

Comparable Selection

The three comparables utilized in the Sales Comparison Approach are competitive transactions located directly within the subject's west Maui neighborhood.  The comparables were selected for market comparison due to their similarities in construction quality, condition, and design appeal.

Adjustments were applied as appropriate to reflect the variations in site area and improvement differences.

Description of Adjustments

The underlying principle in terms of which adjustments are made or measured is the Principle of Contribution.  In other words, what effect the does the presence or absence of a factor, or varying amounts of the factor being considered contribute to the overall sales price or value of the property.

The following is a brief summary of adjustments to reflect the significant or salient property characteristics between the subject and the comparable sales.

Site Area:  The adjustment for site area differences was determined by subtracting the estimated site values of the comparables from the estimated site value of the subject.  It should be noted that site values include consideration of zoning and permitted density, location, size and shape, on-site and off-site improvements, topography, utilities, etc.

Age of Improvements:  It is a common market perception that new is better than old.  Market research and discussion with Realtors and purchasers revealed mixed reaction to the age of the improvements.  There seems to be general consensus of opinion that the age of the improvements have some bearing on price, and the age of a structure is reflected in the price.  The primary factors which have the most direct influence on price however, are the overall construction quality and condition of the improvements.  The typical reaction and opinion indicates a token contribution to total property value, and a subjective, consensus opinion of $250 per year.

Room Count: Room count is a very subjective area and depends heavily upon the individual requirements of buyers.  The item which has most influence on value is the number of bedrooms and bathrooms.  Market evidence indicates that these factors contribute to higher values due to greater functional utility.  The adjustment for room count differences were applied at $1,000 per room.

Overall Living Area:  Market research reveals a wide range of adjustments attributable to living area differences, and this is principally due to the individual preference, tastes, and requirements of purchasers.  Primary factors having a direct effect on living area adjustments would be overall quality and condition of the improvements.  Based upon our analysis a $45 per square foot adjustment was applied as appropriate.

## TEXT ADDENDUM
## (Continued)

Porch/Patio/Deck/etc.:    There appears to be mixed reaction to the existence or absence of various peripheral improvements such as porches, patios, etc.  The general consensus of opinion is that the contributory value of these types of improvements would be a portion of the cost of construction a similar peripheral improvement.

Equal weight was placed on each comparable in determining the subject's value via the Sales Comparison Approach since no individual transaction was considered to be more representative of the subject than the others. Thus the indicated value via the Sales Comparison Approach was concluded at **$1,050,000**.

### RECONCILIATION AND FINAL OPINION OF VALUE

The final value estimate is the Appraiser's opinion and conclusion resulting from an application of the Appraisal Process. It is derived from evaluation of each of the alternative indications of value developed in each approach to value utilized in the appraisal.

After analysis of the subject property and considering the strengths and weaknesses, significance, and applicability of the three generally recognized approaches to value, it is the Appraiser's opinion that the Sales Comparison Approach most closely represents what the typically informed, rational purchaser would pay for a residential property if it were available for sale on the open market as of the date of the appraisal, given all the data available to and utilized by the Appraiser.

Thus, the market value estimate of the subject property as of the effective date of the appraisal, based primarily upon the value derived by the Sales Comparison Approach, was concluded to be

**ONE MILLION FIFTY THOUSAND DOLLARS**
**($1,050,000)**

ACM Consultants, Inc.   File No. 6-1713

# PLAT MAP

| Borrower/Client | Antonio Panlasigui | | | | Unit No. | N/A |
|---|---|---|---|---|---|---|
| Address | 57 Piina Place | | | | | |
| City | Lahaina | County | Maui | State | HI | Zip Code | 96761 |
| Lender/Client | Freedom Equity Group Financial Services | | | | | |



# SKETCH

| | |
|---|---|
| Borrower/Client  Antonio Panlasigui | |
| Address  57 Piina Place | Unit No.  N/A |
| City  Lahaina   County  Maui   State  HI | Zip Code  96761 |
| Lender/Client  Freedom Equity Group Financial Services | |

LOWER LEVEL                    UPPER LEVEL



Sketch by Apex IV™

Comments:

| AREA CALCULATIONS SUMMARY | | | |
|---|---|---|---|
| Code | Description | Net Size | Net Totals |
| GLA1 | First Floor | 1095.0 | 1095.0 |
| GLA2 | Second Floor | 860.0 | 860.0 |
| P/P | Porch | 84.0 | |
| | Lanai | 160.0 | |
| | Deck | 160.0 | 404.0 |
| GAR | Garage | 480.0 | 480.0 |
| OTH | Storage | 24.0 | 24.0 |
| | | | |
| Net LIVABLE Area | (Rounded) | | 1955 |

| LIVING AREA BREAKDOWN | |
|---|---|
| Breakdown | Subtotals |
| First Floor | |
| 21.0  x  35.0 | 735.0 |
| 18.0  x  20.0 | 360.0 |
| Second Floor | |
| 20.0  x  43.0 | 860.0 |
| | |
| 3 Items   (Rounded) | 1955 |

## SUBJECT PHOTOGRAPH ADDENDUM

| | | | | |
|---|---|---|---|---|
| Borrower/Client | Antonio Panlasigui | | | |
| Address | 57 Piina Place | | Unit No. | N/A |
| City | Lahaina | County Maui | State HI | Zip Code 96761 |
| Lender/Client | Freedom Equity Group Financial Services | | | |



**Front View of Subject**



**Rear View of Subject**



**Street Scene**

## SUBJECT PHOTOGRAPH ADDENDUM

| | | | |
|---|---|---|---|
| Borrower/Client | Antonio Panlasigui | | |
| Address | 57 Piina Place | Unit No. | N/A |
| City | Lahaina | County | Maui | State | HI | Zip Code | 96761 |
| Lender/Client | Freedom Equity Group Financial Services | | |



**Interior View of Living Room**



**Interior View of Kitchen**



**Overall View From Subject**

## SUBJECT PHOTOGRAPH ADDENDUM

| | |
|---|---|
| Borrower/Client  Antonio Panlasigui | |
| Address  57 Piina Place | Unit No.  N/A |
| City  Lahaina    County  Maui    State  HI | Zip Code  96761 |
| Lender/Client  Freedom Equity Group Financial Services | |



**View of Damage to Rear Retaining Wall**

## COMPARABLE PHOTOGRAPH ADDENDUM

| | |
|---|---|
| Borrower/Client  Antonio Panlasigui | |
| Address  57 Piina Place | Unit No.  N/A |
| City  Lahaina    County  Maui    State  HI | Zip Code  96761 |
| Lender/Client  Freedom Equity Group Financial Services | |



**Sales Comparable 1**
**Front View**

| | |
|---|---|
| Address: | 47 Ponciana Road |
| Prox. to Subject: | 0.70 MI SE |
| Sales Price: $ | 1065000 |
| Gross Living Area: | 1947 |
| Total Rooms: | 6 |
| Total Bedrooms: | 3 |
| Total Bathrooms: | 2.50 |
| Location: | Kahana |



**Sales Comparable 2**
**Front View**

| | |
|---|---|
| Address: | 11 Poinciana Road |
| Prox. to Subject: | 0.73 MI SE |
| Sales Price: $ | 1049000 |
| Gross Living Area: | 1866 |
| Total Rooms: | 6 |
| Total Bedrooms: | 4 |
| Total Bathrooms: | 3.00 |
| Location: | Kahana |



**Sales Comparable 3**
**Front View**

| | |
|---|---|
| Address: | 29 Poinciana Road |
| Prox. to Subject: | 0.72 MI SE |
| Sales Price: $ | 1100000 |
| Gross Living Area: | 2262 |
| Total Rooms: | 6 |
| Total Bedrooms: | 3 |
| Total Bathrooms: | 2.00 |
| Location: | Kahana |

# LOCATION MAP

| | | | | | |
|---|---|---|---|---|---|
| Borrower/Client | Antonio Panlasigui | | | Unit No. | N/A |
| Address | 57 Piina Place | | | | |
| City | Lahaina | County | Maui | State HI | Zip Code 96761 |
| Lender/Client | Freedom Equity Group Financial Services | | | | |



Map (C)1984-2006 Tele Atlas NA Inc

Scale: 1.74 miles

# FLOOD MAP

Borrower/Client   Antonio Panlasigui

Address   57 Piina Place                                                                        Unit No.   N/A

City   Lahaina                          County   Maui              State   HI      Zip Code   96761

Lender/Client   Freedom Equity Group Financial Services



**Prepared for:**
ACM Consultants, Inc.



FLOODSCAPE

Flood Hazards Map

**Map Number**
1500030151C

**Effective Date**
September 17, 1997

For more information about
flood zones and flood
insurance, contact:

**Company Name**
800.555.1212
www.company.com

Powered by FloodSource
877.77.FLOOD
www.floodsource.com

© 1999-2006 SourceProse Corporation. All rights reserved. Protected by U.S. Patent Numbers 6631326, 6678615, and 6842698.

## Chapter 19.08

### RESIDENTIAL DISTRICTS

Sections:
| | |
|---|---|
| 19.08.010 | Generally. |
| 19.12.020 | Permitted uses. |
| 19.12.030 | Special Uses. |
| 19.12.040 | Area Regulations. |
| 19.12.050 | Height Regulations. |
| 19.12.060 | Yards. |

## 19.08.010 Generally.

Areas for single family dwellings are established to provide for harmonious residential neighborhood without the detraction of commercial and industrial activities.  (Prior code § 8-1.4(a))

## 19.08.020 Permitted uses.

Within the residential districts, the following uses shall be permitted:

A. Single –family dwellings;

B. Greenhouses, flower and truck gardens and nurseries; provided, that there shall be no retailing or transaction of business on the premises;

C. Parks and playgrounds, noncommercial; certain commercial amusement and refreshment sale activities may be permitted when under supervision of the government agency in charge of the park or playground;

D. Schools, elementary, intermediate, high and colleges, publicly or privately owned, which may include on-campus dormitories;

E. Buildings or premises used by the federal, State, or county governments for public purposes;

F. Accessory buildings located on the same lot, the use of which is customary and incidental, usual and necessary to that of the main building or to the use of the land;

G. An accessory dwelling may be permitted where the area of the lot on which the main house is located is seven thousand five hundred square feet or more. Chapter 19.35 of this article, pertaining to accessory dwellings, shall be applicable to any accessory dwelling;

H. Day care nurseries, kindergartens, nursery schools, child care homes, day care homes, day care centers, nurseries, preschool kindergartens, babysitting services, and other like facilities located in private homes used for child care services.  These facilities shall serve six of fewer children at any one time on lot sized of less than seven thousand five hundred square feet, serving eight or fewer children at any one time on lot sizes of seven thousand five hundred or more square feet but less than ten thousand square feet or serving twelve of fewer children at any one time on lot sizes of ten thousand or more square feet;

I. Subject to the restrictions and standards of chapter 19.64 of this title, Type 1 bed and breakfast homes shall be permitted on any lot; Type 2 bed and breakfast homes shall be permitted on lots of seven thousand five hundred square feet or greater, and Type 3 bed and breakfast homes shall be permitted on lots of ten thousand square feet or greater. (Ord. 2628 § 1, 1997; Ord. 2609 § 3, 1997: Ord. 2585 § 1, 1997: Ord. 2030 § 3, 1991: Ord. 1956 § 1, 1990: Ord. 1269 § 6, 1982; prior code § 8-1.4(b))

## 19.08.030 Special Uses.

The following are declared special uses, and approval of the appropriate planning commission shall be obtained:

A. Churches together with accessory buildings;

B. Day care nurseries, kindergartens, nursery schools, child care homes, day care homes, day care centers, nurseries, preschool kindergartens, babysitting services, and other like facilities located in private homes used for child care services serving more than the number of children defined in section 19.08.020H;

C. Hospitals; provided, that written consent of seventy-five percent of the property owners within five hundred feet from the property to be used for such purpose has been obtained;

D. Nursing or convalescent homes and domiciliary facilities operated and maintained to provide nursing or supporting care;

E. Housing for the aged, operated by governmental or nonprofit organizations; provided, that the normal population density is not increased more than ten percent;

F. Housing for low and moderate income families, operated by governmental or nonprofit organizations; provided, that the normal dwelling unit density is not increased more than ten percent;

G. Public utilities substations, which are not and will not be hazardous or a nuisance to the surrounding areas;

H. Certain domestic type businesses in the home, provided there will be no detrimental or nuisance effect upon the neighbors. Such businesses shall be normal functions of the home, such as baking, sewing and piano playing;

I. Residential planned developments only. (Ord. 2628 § 2, 1997; Ord. 2585 § 2, 1997; Ord. 1956 § 2, 1990: prior code § 8-1.4(c))

## 19.08.040 Area Regulations.

A. The minimum lot area shall be six thousand square feet in R-1 residential districts, seven thousand five hundred square feet in R-2 residential districts, and ten thousand square feet in R-3 residential districts. The minimum lot width shall be sixty feet for R-1, sixty-five feet for R-2, and seventy feet for R-3. There may be more than one single-family dwelling on any lot when the minimum lot area of six thousand square feet in R-1, seven thousand five hundred square feet in R-2, and ten thousand square feet in R-3 is provided for each dwelling unit.

B. Subject to approval of the commission, mixture of lot sizes may be permitted within any residential district; provided, however, that the minimum lot size shall not be less than six thousand square feet, and that the overall project density shall not exceed that permitted within the district. Where the subdivision or project is designed to meet the needs of low or moderate income families, and adequate provisions are provided to insure owner-occupancy and the control or limitation of speculation, the commission may permit an increase in density not to exceed ten percent. (Ord. 784 § 1, 1974: prior code § 8-1.4(d))

## 19.08.050 Height Regulations.

No building shall exceed two stories nor thirty feet in height. (Prior code § 8-1.4(e))

## 19.12.060 Yards.

A. There shall be a front yard of fifteen feet, side yard of six feet, and rear yard of six feet for all residential districts. Side and rear yards for two-story buildings shall be ten feet in all residential districts.

B. Greenhouses may be constructed along the rear or side lot lines, provided, the entire roof is constructed of laths or screen to permit passage of light and air; the clear distance to the front lot line is not less than thirty feet; and that no portion of the greenhouse shall overhang into the next property. If the greenhouse is not constructed on the lot lines, then it must conform to the side and rear yard spacing of six feet. (Prior code § 8-1.4(f))

**Appraiser Qualifications**

## APPRAISER QUALIFICATIONS

### Len Inokuma, CRA

**ASSOCIATION MEMBERSHIPS:**

Certified Residential Appraiser, State of Hawaii No. CRA-645,
Licensed 10/9/2002, Expires 12/31/2007

**EXPERIENCE:**

ACM Consultants, Inc.
2073 Wells Street
Suite 100
Wailuku, Hawaii 96793
May 1998 to Present

Previously associated with the following:
Loan Officer – CNH Funding – Las Vegas, NV  1997-1998
Guest Services Supervisor – Rio Hotel and Casino 1995-1997

**EDUCATION:**

University of Nevada Las Vegas – BSBA Real Estate Finance 1989-1995
Baldwin High School 1985-1989

**SUCESSFULLY COMPLETED THE FOLLOWING COURSES AND EXAMINATIONS:**

Appraisal Institute, Course, II420N "Business Practices and Ethics" – Honolulu HI  2005

National Association of Master Appraisers, Course 772 *"National USPAP Course"* – Honolulu, Hawaii 2004

Appraisal Institute, Course 310 *"Basic Income Capitalization"* – San Diego CA  2004

National Association of Master Appraisers, Course 627 *"Principles of Real Estate Appraisal"* – Honolulu, Hawaii 2001

National Association of Master Appraisers, Course 636 *"Practice of Real Estate Appraisal"* – Honolulu, Hawaii 2001

National Association of Master Appraisers, Course 660 *"Writing The Narrative Appraisal Report"* – Honolulu, Hawaii 2001

National Association of Master Appraisers, Course 672 *"Standards of Professional Appraisal Practice"* – Honolulu, Hawaii 2001

Appraisal Institute, Course 110 *"Appraisal Principles"* – Tempe AZ 1999

Appraisal Institute, Course 120 *"Appraisal Procedures"* – Tempe AZ 1999

**QUALIFIED CONTINUING EDUCATION SEMINARS ATTENDED:**

Appraisal Institute, Case Studies in Limited Partnerships and Common Tenancy Honolulu, 2005
Appraisal Institute, *Reappraising, Readdressing, Reassigning: What to do And Why and What to Include in a Work File (Hawaii ID 04-097)* Honolulu, HI 2004
Appraisal Institute, *Scope of Work: Where Are We Now? (Hawaii ID 04-098)* Honolulu, HI 2004
Appraisal Institute, *Fannie Mae Residential Presentation (Hawaaii ID 04-099)* Honolulu, HI 2004
Appraisal Institute, *FHA Appraisal Inspection from the Ground Up: What Every Appraiser Should Know (Hawaii ID 03-011)* Honolulu, HI  2003
Appraisal Institute, *"7-Hour USPAP Course"* Honolulu, HI  2003
Appraisal Institute, *"Business Practices and Ethics"* Honolulu, HI  2003
Appraisal Institute, *Client Forum: "Meet Your Bosses"* Honolulu, HI  2002
Appraisal Institute, *"Practical Ways to Leverage New Tech. Tools in Appraisal Business"* Honolulu, HI  2002
Appraisal Institute, *"Financial Reporting Valuations, Part 1: Principles/Concepts"* Honolulu, HI  2002
Appraisal Institute, *"Technology Update, Part 1"* Honolulu, HI  2002

12/28/2005



Appraisal Qualifications
of
## TED YAMAMURA, SRA, CGA

*ASSOCIATION MEMBERSHIPS*

Certified General Appraiser, State of Hawaii; License No. CGA-160,
Expires 12/31/2007
Member—-Appraisal Institute - Honolulu Chapter #67, Senior Residential
Appraiser (SRA) Designation - 1985
Founding Member--National Association of Realtors, Appraisal Section
Member—-International Right of Way Association (IRWA) - Honolulu
Chapter #30 - October 1982; President January 2004
Member—-State of Hawaii, Board of Land & Natural Resources – July 2001



*EXPERIENCE AND EDUCATION*

Senior Appraiser, ACM Consultants, Inc.
2073 Wells Street Suite 100
Wailuku, Maui, Hawaii 97693

Previously associated with the following:

Vice President - Alexander & Alexander, Ltd. - Maui Division;
March 1979 - August 1982
Assistant Vice President - Honolulu Federal Savings & Loan Assn;
September 1974 - March 1979
Educated: Maui High School and University of Hawaii

*SUCCESSFULLY COMPLETED THE FOLLOWING COURSES:*

Society of Real Estate Appraisers (SREA) Course 101 Examination,
"Introduction to Appraising Real Property", Honolulu, Hawaii - 1979
Society of Real Estate Appraisers (SREA) Course 102 Examination, "Applied
Residential Property Valuation", Honolulu, Hawaii - 1982
Society of Real Estate Apprais ers (SREA) "Narrative Demonstration
Report" Examination, Wailuku, Maui, Hawaii - 1983
International Right of Way Association (IRWA) "Skills of Expert Testimony
Course 214" Honolulu, Hawaii - 1988
Appraisal Institute - Standards of Professional Practice Part A and Part B,
Honolulu, Hawaii - 1993
Appraisal Institute - Standards of Professional Practice Part C, Honolulu,
Hawaii - 1997
Appraisal Institute – Course 400, Uniform Standards of Professional Appraisal
Practice (USPAP), Honolulu, Hawaii – 2003
Appraisal Institute – Course 420, Business Practices and Ethics,
Honolulu, Hawaii – 2003
Appraisal Institute – National Uniform Standards of Professional Appraisal
Practice (USPAP) Update Course – Honolulu, Hawaii - 2005
International Right of Way Association – Course 409, Integrating Appraisal Standards,
Anaheim, California – 2005

*QUALIFIED CONTINUING EDUCATION SEMINARS ATTENDED:*

Society of Real Estate Appraisers (SREA) "Application of Market Extraction's" Seminar,
Honolulu, Hawaii - 1981
Society of Real Estate Appraisers (SREA) "Creative Financing and Cash Equivalency",
Seminar, Honolulu, Hawaii - 1983
Society of Real Estate Appraisers (SREA) "Appraising Single Family Residences", Seminar,
Honolulu, Hawaii - 1983
International Right of Way Association (IRWA) "Condemnation", Seminar, Honolulu,
Hawaii - 1982
American Institute of Real Estate Appraisers (AIREA) "R-41b and Subdivision Analysis",
Seminar, Honolulu, Hawaii - 1985
Society of Real Estate Appraisers (SREA) "R-41c and the Appraiser", Seminar, Las Vegas,
Nevada - 1987
Society of Real Estate Appraisers (SREA) "Appraisers Guide to the Uniform Residential
Appraisal Report", Seminar, Honolulu, Hawaii - 1987
Society of Real Estate Appraisers (SREA) "Professional Practice", Seminar, Honolulu,
Hawaii - 1988
Society of Real Estate Appraisers (SREA) "Federal Home Loan Bank Board Appraisal
Standards", Seminar, Honolulu, Hawaii - 1989
Society of Real Estate Appraisers (SREA) "Uniform Small Residential Income Appraisal
Report", Seminar, New York - 1989
American Institute of Real Estate Appraisers (AIREA) "Easement Valuation", Seminar,
Los Angeles, California - 1990
Federal National Mortgage Association (FNMA) "Fannie Mae Appraisals", Seminar,
Honolulu, Hawaii - 1990
Appraisal Institute "Accrued Depreciation", Seminar, Las Vegas, Nevada - 1992
Appraisal Institute "Market Analysis", Seminar, Las Vegas, Nevada - 1992
Appraisal Institute "Residential Appraisal Review", Seminar, Chicago, Illinois - 1994
Appraisal Institute "Understanding Limited Appraisals and Appraisal Reporting Options"
Seminar, Chicago, Illinois - 1994
Appraisal Institute "Technology and the Future of the Real Estate Appraisal Industry",
Seminar, Anaheim, California - 1995
Appraisal Institute "The Employee Relocation Council Form and the Drive-By Form",
Seminar, Anaheim, California - 1995
Appraisal Institute "The Condominium Form and the Small Residential Income Property
Appraisal Report Form", Seminar, Anaheim, California - 1995
Appraisal Institute "Technology Trends for the New Appraisal Office: EDI, GIS, and
Digital Imaging" Seminar, San Francisco, California - 1995

## Appraiser Qualifications

Appraisal Institute "Diversification of Appraisal Services" Seminar, San Francisco,
    California - 1995
Appraisal Institute "Appraising for the Secondary Market" Seminar, Honolulu,
    Hawaii - 1996
Appraisal Institute "Special Purpose Properties" Seminar, Honolulu, Hawaii - 1997
Appraisal Institute "Litigation Skills for the Appraiser:  An Overview" Seminar, Honolulu,
    Hawaii - 1998
Appraisal Institute "Valuation of Detrimental Conditions in Real Estate" Seminar,
    Honolulu, Hawaii – 2000
Appraisal Institute "Case Studies in Residential Highest and Best Use" Seminar, Honolulu,
    Hawaii – 2000
Appraisal Institute "Advanced Sales Comparison Approach" Seminar,  Honolulu,
    Hawaii - 2000
Appraisal Institute "Appraisal of Nonconforming Uses" Seminar,  Honolulu, Hawaii – 2000
The American Society of Farm Managers & Rural Appraisers "Appraising Rural
    Residential Properties" Seminar - 2001
The American Society of Farm Managers & Rural Appraisers "Conservation Easements"
    Seminar, Honolulu, Hawaii – 2001
Lorman Education Services "Zoning and Land Use in Hawaii" Seminar, Honolulu, Hawaii – 2003
International Right of Way Association "Uniform Act Symposium", Anaheim, California - 2005

*LEGAL*

Qualified as an expert witness in Second Circuit Court, State of Hawaii, and U.S. Bankruptcy Court.

**Licenses**

**ACM Consultants, Inc.**
## APPRAISER LICENSES
**State of Hawaii**













Designed by United Systems Software Company (800) 969-8727